

CLERK'S OFFICE
A TRUE COPY
Sep 24, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* **Information Associated with target ICloud Account: 786-798-0972** | ) ) ) ) ) Case No. 25 MJ 170 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Distributing a controlled substance. |
| 21 USC 843(B) | Use of a Communication Device to facilitate a controlled substance offense. |
| 21 USC 846 | Conspiracy to commit a controlled substance offense. |

The application is based on these facts:

See attachment

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert Gregory* Digitally signed by Robert Gregory
Date: 2025.09.23 10:53:52 -05'00'

*Applicant's signature*

TFO Robert Gregory

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: __09/24/2025__

*William E. Duffin*

*Judge's signature*

City and state: Milwaukee, WI

William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Robert Gregory, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information from the iCloud account associated with the following cellular number **786-798-0972** (**"TARGET ACCOUNT A"**)**,** that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am Police Officer with the Milwaukee Police Department (WI) and a Federally Deputized Task Force Officer with Drug Enforcement Administration (DEA) assigned to DEA Group 68.  I am also assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) – Interdiction Initiative as a drug detection K9 handler and partnered with K9 "TITUS."   I have been employed as a full-time law enforcement officer for over ten (10) years.

3.     As Police Officer and Task Force Officer, I have participated in the investigation of gang and narcotics related offenses, resulting in the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity.  As an investigator, I have interviewed

1

many individuals involved in drug trafficking and gang activity, and have obtained information from them about the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the drug traffickers, gang members, and abusers of controlled substances. I have participated in all aspects of drug and gang investigations, including physical surveillance, execution of search warrants, court-ordered wiretaps, analysis of phone and financial records, and the arrests of drug traffickers. I have also been the affiant and participated in the preparation and execution of drug and gang-related search warrants. Additionally, I have spoken with other experienced drug investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers and gang members to manufacture, smuggle, safeguard, and distribute narcotics and firearms, and to collect and launder trafficking-derived proceeds. In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

4.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses.

I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps.

5.      As a part of my duties, I investigate criminal violations relating to narcotics trafficking offenses, including violations of Title 21, United States Code, Sections 841, 843, and 846. In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, including cellular telephones and other electronic telecommunication devices.

6.      I have had formal training in the investigation of drug trafficking. I have worked with informants in the investigation of drug trafficking. I have participated in the execution of numerous search warrants in which controlled substances, firearms, drug paraphernalia, and monies were seized.

7.      This affidavit is based upon my personal knowledge and upon information provided to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

8.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1), 843(b), and 846 have been committed by **Larry RUSSELL ("RUSSELL")** and others known and

3

unknown. There is also probable cause to search the information described in Attachments A for evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

10.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.      On Monday, August 25th, 2025, TFO ESQUEDA and Wisconsin State Trooper G. SEDGBEER-WILLIAMS conducted a drug investigation at a private parcel facility and recovered a suspicious parcel ("SUBJECT PARCEL") shipped from California.

12.      The SUBJECT PARCEL is described as: a private parcel company parcel with Tracking number 3923 8561 8690.  The SUBJECT PARCEL is described as a brown cardboard box approximately 12 inches x 3 inches x 17.5 inches.  The parcel shipping label identified the shipper as Scott Health & Fitness at 710 NW 57th St, Suite FL, Fort Lauderdale, FL 33309 and the recipient as Kimberly Green at 3943 N. 79th Street, Milwaukee, WI 53222.

13.      The SUBJECT PARCEL is a "Express Delivery" and is from California.   TFO ESQUEDA knows California is a source state for controlled substances.

14.      On Monday, August 25th, 2025, Trooper SEDGBEER-WILLIAMS obtained a State of Wisconsin search warrant that was signed by Milwaukee County Commissioner Susan ROTH for the SUBJECT PARCEL.  Affiant opened SUBJECT PARCEL and discovered it contained approximately **510 grams of cocaine (including packaging).**

4

15. On Monday, August 25th, 2025, TFO ESQUEDA obtained a State of Wisconsin anticipatory search warrant that was signed by Milwaukee County Commissioner Susan ROTH for the address of 3946 N. 79th Street ("TARGET RESIDENCE"). When one (1) of the two (2) following conditional precedents are met, the search warrant be executed; that is:

- Law enforcement observes an individual or individuals exit from **the TARGET RESIDENCE**. The individual or individuals accepts the SUBJECT PARCEL from the delivery person or takes it from the place where the delivery person leaves the parcel;

  and/or

- Law enforcement observes an individual or individuals approach **the TARGET RESIDENCE**, and accept and/or take possession of or custody of the SUBJECT PARCEL before entering or attempting to enter into the **TARGET RESIDENCE**

16. On Monday, August 25th, 2025, an undercover police officer placed the SUBJECT PARCEL full of "sham" on the front porch of the TARGET RESIDENCE. A female subject exited the front door of the TARGET RESIDENCE, retrieved the SUBJECT PARCEL, and returned to the TARGET RESIDENCE. Since one (1) of the two (2) conditions were met, law enforcement officers executed a search warrant at the TARGET RESIDENCE. Law enforcement officers knocked on the front entry door of the residence and were met by a female subject identified as Emanie GIBSON (DOB: XX-XX-2008), who opened the front entry door. Law enforcement officers entered and cleared the TARGET RESIDENCE.

17. Law enforcement officers searched the TARGET RESIDENCE and located the following items of evidentiary value:

- SUBJECT PARCEL

- Four (4) handguns

- 205 grams of marijuana

5

- 1,350 grams of THC vape cartridges

- Digital gram scale

- Glass Pyrex measuring cups, which are typically used by cocaine traffickers to process cocaine

- A large quantity of US currency in various denominations

18.     Law enforcement officers spoke with Emanie GIBSON, who allowed law enforcement officers to review the text messages on her cellular phone.  While reviewing the text message conversation between Emanie GIBSON and her mother (Ebony PETTIGREW, XX-XX-1986) ("Ebony PETTIGREW"), Ebony PETTIGREW sent multiple text messages earlier today (08-25-2025) for Emanie GIBSON to be on the lookout for a package that would be delivered today.

19.     While TFO ESQUEDA and law enforcement officers were on scene at the TARGET RESIDENCE, Ebony PETTIGREW arrived. Law enforcement officers spoke with Ebony PETTIGREW, who stated she resided at the TARGET RESIDENCE and gave officers verbal consent to review the text messages on her cellular phone.  Law enforcement officers reviewed text messaging between 414-252-4306, which Ebony PETTIGREW identified as her boyfriend, Larry RUSSELL. On Friday, August 22nd, 2025, the following text messaging conversation took place with Larry RUSSELL.

- LR – Can you see if fedex tried to deliver
- EP – Yes. They just left like 5 min ago
- LR – Ok Did they ring the bell?
- EP – No I just checked the cameras when you asked and saw at 1046 he was in the walkway with a package but he was on his phone
- LR – Taking a pic or talking?
- EP – Talking to somebody
- LR – Was it a black dude?
- EP – Looks like it I was trying to send you the clip
- LR – Send to me if you can

6

- EP – (Sent a video of surveillance video taken from the exterior doorbell camera on the front of the residence. The video depicted a FedEX employee holding a package similar to the size of SUBJECT PARCEL and walking away from the residence and returning to a Fedex vehicle)

TFO ESQUEDA was aware the SUBJECT PARCEL containing the 510 grams of cocaine was initially intended to be delivered by the private parcel facility to the TARGET RESIDENCE on Friday, August 25th, 2025.

20.     Law enforcement officers arrested Ebony PETTIGREW and conveyed her to the West Allis Police Department located at 11301 W. Lincoln Avenue, West Allis, WI 53227. While at West Allis PD, Trooper SEDGBEER-WILLIAMS, TFO ESQUEDA, and Affiant conducted an interview of Ebony PETTIGREW. Ebony PETTIGREW stated Larry RUSSELL is her boyfriend and would spend the night at her residence (3943 N. 79th Street) two (2) nights out of the week. Ebony PETTIGREW further stated Larry RUSSELL has keys to her residence and can access it without her present. Ebony PETTIGREW explained Larry RUSSELL called her while law enforcement officers were at the TARGET RESIDENCE and told her the police were there. Ebony PETTIGREW told Larry RUSSELL to talk to the police to find out what was going on. Ebony PETTIGREW found it suspicious Larry RUSSELL was not on scene when she arrived since he said he was close by. Ebony PETTIGREW identified three (3) of four (4) firearms as belonging to her. Ebony PETTIGREW stated she didn't have knowledge of the fourth firearm and believed it belonged to Larry RUSSELL. Ebony PETTIGREW did not have knowledge of the bulk US currency inside her residence and believed it belonged to Larry RUSSELL. Ebony PETTIGREW stated she did not know about the marijuana or the drug paraphernalia inside her residence. Ebony PETTIGREW stated she was texting with Larry RUSSELL regarding the text conversation

mentioned in **paragraph no. 19;** that Ebony PETTIGREW identified Larry RUSSELL's phone numbers as the following:

- Phone No. (414) 252-4306
- Phone No. (262) 794-6333

21. On September 2nd, 2025, Affiant submitted an administrative subpoena to FedEx regarding the IP tracking information regarding the SUBJECT PARCEL. FedEx responded and provided multiple IP addresses that were tracking the SUBJECT PARCEL, one being 2607:FB91:0AEE:B196 that belonged to T-Mobile. Affiant submitted an administrative subpoena to T-Mobile for the device and account associated to the described IP address. T-Mobile responded and identified the IP address as belonging to phone no. **786-798-0972 (TARGET ACCOUNT A)** with an unknown subscriber.

22. Furthermore, your affiant began to draft a message utilizing an Apple product to the phone number "786-198-0972". When doing so the numbers in the draft turned blue. Affiant knows this is significant because when two Apple brand products are communicating the messages appear blue but when an Apple brand product is communicating with a non-apple brand product the messages are green. Therefore, your affiant concludes that the phone utilizing no. **786-798-0972, (TARGET ACCOUNT A),** is an Apple iPhone with a corresponding iCloud account.

23. During the entirety of this investigation, case agents have been collecting phone record data for RUSSELL's phone numbers detailed in **paragraph no. 20.** Upon collecting and analyzing the data, case agents have found that **TARGET ACCOUNT A** has one contact with 414-252-4306 with the date of the contact being August 26th, 2025. As previously stated, August 25th, 2025 is the date that the parcel was seized and the anticipatory search warrant was executed. Based on this contact

8

and all of the other information set forth in this affidavit, Affiant believes that the user of **TARGET ACCOUNT A** is a co-conspirator in trafficking controlled substances throughout the United States.

## **BACKGROUND CONCERNING APPLE**

24.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

25.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

   a.  Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

   b.  iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

   c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

9

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

26. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

27. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means

10

of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

28.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the "Find My" service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

29.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an

11

Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

30. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

31. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

12

32.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

33.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.     Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App Store and iTunes Store

13

may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

36. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information from the iCloud account associated with the following cellular number **786-798-0972** ("**TARGET ACCOUNT A**")**,** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachments A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachments A:

a. All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

1

d.   The contents of all instant messages associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.   The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.   All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.   All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.   All records pertaining to the types of service used;

i.   All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j.   All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Larry RUSSELL and others known and unknown, and occurring after September 1, 2024 to the present, including, for each account or identifier listed on Attachments A, information pertaining to the following matters:

(a) The sale, distribution, and possession with intent to distribute controlled substances, and launder the proceeds of drug trafficking;

(b) A conspiracy to distribute and possess with the intent to distribute controlled substances, including the existence, scope, acts in furtherance, and members of the conspiracy;

(c) Evidence about the source, sale, procurement, processing, manufacturing, shipping, or distribution of controlled substances, including customer lists, supplier lists, shipping information, and payments;

(d) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(g) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.

3

☐ Original ☐ Duplicate

**CLERK'S OFFICE**
**A TRUE COPY**
**Sep 24, 2025**
**s/ MMK**
**Deputy Clerk, U.S. District Court**
**Eastern District of Wisconsin**

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 25 MJ 170 |
| Information Associated with target ICloud | ) |
| Account: 786-798-0972 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____10/08/2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____William E. Duffin, U.S. Magistrate Judge_____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for __30__ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____09/24/2025 at 9:45 a.m._____ _William E. Duffin_
*Judge's signature*

City and state: _____Milwaukee, WI_____ William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information from the iCloud account associated with the following cellular number **786-798-0972** ("**TARGET ACCOUNT A**")**,** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachments A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachments A:

a.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the accounts (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of emails sent to and from the accounts (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

1

d. The contents of all instant messages associated with the accounts from September 1, 2024 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the accounts (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the accounts or devices associated with the accounts were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the accounts, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

2

## II.  Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, those violations involving Larry RUSSELL and others known and unknown, and occurring after September 1, 2024 to the present, including, for each account or identifier listed on Attachments A, information pertaining to the following matters:

(a) The sale, distribution, and possession with intent to distribute controlled substances, and launder the proceeds of drug trafficking;

(b) A conspiracy to distribute and possess with the intent to distribute controlled substances, including the existence, scope, acts in furtherance, and members of the conspiracy;

(c) Evidence about the source, sale, procurement, processing, manufacturing, shipping, or distribution of controlled substances, including customer lists, supplier lists, shipping information, and payments;

(d) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(g) The identity of the person(s) who communicated with the user ID about matters relating to drug trafficking, including records that help reveal their whereabouts.

3